UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMY PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:15 CV1487 ACL |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Amy Phillips brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Phillips' multiple severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the matter is reversed and remanded for further proceedings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. Procedural History

Phillips protectively filed her application for DIB on June 22, 2012. (Tr. 163-69.) She alleged that she became disabled on March 24, 2011, due to generalized anxiety disorder, a pituitary gland tumor, fibromyalgia, insulin dependent diabetes, high blood pressure, depression, asthma, migraines, and chronic fatigue syndrome. (Tr. 163, 188.) Phillips' claim was denied initially. (Tr. 97-100.) Following an administrative hearing, Phillips' claim was denied in a written opinion by an ALJ, dated March 10, 2014. (Tr. 10-25.) Phillips then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on July 28, 2015. (Tr. 8, 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Phillips first argues that the RFC formulated by the ALJ was not supported by substantial evidence. Phillips next contends that the ALJ erred in discrediting her subjective complaints.

## II. The ALJ's Determination

The ALJ stated that Phillips met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 15.) The ALJ found that Phillips had not engaged in substantial gainful activity since her alleged onset date of March 24, 2011. *Id.*

In addition, the ALJ concluded that Phillips had the following severe impairments: diabetes, high blood pressure, and "anxiety and depressive disorders." *Id.* The ALJ found that Phillips did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.)

As to Phillips' RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to lift and
> carry 20 pounds occasionally and 10 pounds occasionally. She can
> walk, stand, and sit for six hours. She can no more than
> occasionally climb, balance, stoop, crouch, kneel, and crawl. The
> claimant cannot use her feet for foot controls. The claimant can
> never climb ladders, ropes and scaffolds. She can never work
> around moving machinery and unprotected heights. She must
> avoid concentrated exposure to extreme temperatures and humidity.
> She is limited to simple, repetitive tasks with occasional interaction
> with others. This reflects an ability to perform a range of unskilled,
> light work as defined in 20 CFR 404.1567(b).

(Tr. 19.)

The ALJ found that Phillips' allegations regarding her limitations were not entirely credible. (Tr. 20.) The ALJ indicated that the testimony of the "impartial medical experts" supported his RFC determination. (Tr. 22.) He stated that he was assigning "no weight" to the opinion of treating psychiatrist, Susan Minchin, M.D., because it was unsupported by the medical evidence, including Dr. Minchin's own treatment records. (Tr. 23.)

The ALJ further found that Phillips is unable to perform any past relevant work. (Tr. 23.) The ALJ noted that a vocational expert testified that Phillips could perform jobs existing in significant numbers in the national economy, such as bench assembler and sorter. (Tr. 24.) The ALJ therefore concluded that Phillips has not been under a disability, as defined in the Social Security Act, from March 24, 2011, through the date of the decision. (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on June 22, 2012, the claimant
> is not disabled as defined in sections 216(i) and 223(d) of the Social
> Security Act.

(Tr. 25.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Phillips argues that the ALJ erred in evaluating her RFC, and assessing the credibility of her subjective complaints.

Residual functional capacity is defined as that which a person remains able to do despite her limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703-04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at 863. The claimant bears the burden of establishing her RFC. *Goff,* 421 F.3d at 790.

Phillips argues that the mental RFC[2] formulated by the ALJ is not supported by substantial

---

[2]Phillips does not challenge the ALJ's determination with regard to her physical RFC. The

evidence. Specifically, Phillips contends that the ALJ erred in weighing the opinion evidence when determining her RFC.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

---

undersigned will not, therefore, address the medical evidence regarding Phillips' physical impairments.

The medical opinion evidence regarding Phillips' mental impairments consists of three sources: (1) the testimony of medical expert Dr. Faren Akins presented at the administrative hearing; (2) the Mental Medical Source Statement of treating psychiatrist Dr. Minchin; and (3) the Mental Residual Functional Capacity Assessment of state agency psychologist Stephen S. Scher, Ph.D.

Phillips first argues that the ALJ erred in evaluating the opinion of Dr. Akins. The ALJ found that Phillips had the RFC to perform a "range of light, unskilled work." (Tr. 22.) As support for this finding, the ALJ stated that the "impartial medical experts testified to this level of work activity." *Id.*

Dr. Akins testified as follows, in relevant part:

[ALJ]: Would you please list the Claimant's mental impairments, if any, and please discuss which can be demonstrated by the medical records in the case?

[Dr. Akins]: I do find mention[ed] in a few places that the Claimant has a past history of anxiety disorder, that's at 8F 19. There also is mention made of a history of anxiety attacks, that's at 7F 5. And there's mention made that medication was being prescribed at one point for panic attacks, that's at 5F 13.

[ALJ]: In your opinion, do any of these impairments taken individually rise to the level of meeting or equaling a criteria of a listed impairment in the listings of impairments?

[Dr. Akins]: No. It's possible that the (INAUDIBLE) of 12.06 might be met, but there's no indication in the record of the Claimant having received any treatment for the conditions other than the one mention of medication. *And there's virtually nothing in the record to tell me anything about how these conditions might function to impair the person's work-related abilities.*
    I do find that Exhibit 8F Page 21 did have a brief mental status examination that simply mentioned that memory was intact and attention was normal. In Exhibit 4F 9, the psychiatric comments included judgment and insight okay and mood appropriate. *So, there's very little information in the record that would actually speak to the level of severity and the extent to which the panic attacks or the anxiety might impair the, the person's ability to work.*

[ALJ]: What would be your B criteria on this lady?

> [Dr. Akins]: *I would be hard-pressed to give you one. I, I could say that none of the four would be marked, but as far as giving you gradations beyond that I simply don't feel I have the data to do so.*

(Tr. 40-41) (emphasis added).

Contrary to the ALJ's finding, Dr. Akin did not testify that Phillips was capable of performing unskilled work. Rather, Dr. Akin repeatedly indicated that she did not have sufficient information with which to provide an opinion as to Phillips' work-related limitations. When pressed by the ALJ to provide an opinion regarding the "B criteria," Dr. Akin stated that she could only say that Phillips did not have marked limitations in any of the four areas. She stated that she did not have the data to provide any more specific limitations. It cannot be said, therefore, that Dr. Akin's testimony constitutes substantial evidence to support the ALJ's mental RFC.

Phillips' treating psychiatrist, Dr. Minchin, completed a Medical Source Statement-Mental on January 28, 2014. (Tr. 864-65.) Dr. Minkin expressed the opinion that Phillips was extremely limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule or maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and travel in unfamiliar places or use public transportation. (Tr. 864-65.) She found that Phillips was markedly limited in the following areas: ability to understand and remember detailed instructions, carry out detailed instructions, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. *Id.* Dr. Minkin found that Phillips was moderately limited in her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, work in coordination with or proximity

to others without being distracted by them, make simple work related decisions, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. *Id.*

The ALJ indicated that he was assigning no weight to Dr. Minkin's opinion because it was unsupported by any medical evidence, including Dr. Minkin's own treatment notes. (Tr. 23.) The ALJ stated that "no examination revealed that Phillips had extremely limited ability to perform any work-related activities such as maintaining attention and concentration for extended periods." *Id.*

Phillips saw Dr. Minkin on seven occasions from April 2012, through November 2012. (Tr. 601-05, 861-62.) On her initial visit in April 2012, Phillips complained of panic attacks, agoraphobia, anxiety, insomnia, and depression. (Tr. 605.) Dr. Minkin diagnosed Phillips with panic disorder and depression, and prescribed psychotropic medications. *Id.* Phillips saw Dr. Minkin for follow-up the next month, at which time Dr. Minkin noted Phillips' affect was restricted on examination, and her hygiene and eye contact were good. (Tr. 604.) Dr. Minkin's assessment was "no improvement." *Id.* On June 4, 2012, Phillips' affect was restricted and anxious. (Tr. 603.) Dr. Minkin found "very slight improvement." *Id.* On July 9, 2012, Phillips' affect was restricted. (Tr. 602.) Phillips returned on July 27, 2012, at which time Dr. Minkin found "slight improvement." (Tr. 601.) In September 2012, Phillips reported that her anxiety was better, although her mood was "very depressed." (Tr. 862.) Dr. Minkin did not assess Phillips' affect at this visit, but her general assessment was that Phillips was "improving!!" *Id.* On November 5, 2012, Phillips reported that her sleep was better, but her mood was depressed. (Tr. 861.) Phillips' affect was restricted upon examination, and her hygiene and eye

contact continued to be "good." *Id.* At each of these visits, Dr. Minkin adjusted Phillips' various medications.

It is true that Dr. Minkin's treatment notes do not document extreme or marked limitations as found in her opinion. Dr. Minkin's treatment notes are handwritten, and in some cases, are illegible. *Id.* These records do not provide any information regarding Phillips' work-related limitations. Phillips did not receive treatment from any other mental health professional.[3]

The only other opinion regarding Phillips' mental health limitations is that of non-examining state agency psychologist Dr. Scher. Dr. Scher expressed the opinion that Phillips was moderately limited in her ability to understand and remember very short and simple instructions, understand and remember detailed instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. (Tr. 88-89.) Dr. Scher found that Phillips retained the mental ability to: understand, recall, and carry out at least moderately complex instructions and procedures requiring brief learning periods, concentrate and persist at familiar tasks requiring some independent judgment where quotas are not critical, interact as needed with supervisors and peers sufficiently for task completion with limited interpersonal demands and

---

[3]The record does reflect that Phillips complained of anxiety to her primary care providers when presenting for treatment of various physical complaints, and that she was prescribed psychotropic medication for her anxiety. (Tr. 280, 275, 417.)

limited and brief public contact, and adapt adequately to situational conditions and changes with reasonable support and structure.  (Tr. 90.)

The ALJ did not discuss this opinion or indicate the weight assigned to it.  Phillips contends this was error.  In determining a claimant's RFC, the ALJ is required to consider the medical opinion evidence of record together with the other relevant evidence.  20 C.F.R. § 404.1527(b).  Unless the ALJ assigns controlling weight to a treating physician's opinion, the ALJ must explain the weight given to every medical opinion of record, regardless of its source.  *See* 20 C.F.R. §§ 404.1527(c).

The ALJ failed to comply with the regulations when he did not explain the weight, if any, given to Dr. Scher's opinion.  *See* 416 C.F.R. § 404.1527.  "The ALJ may have considered and for valid reasons rejected the ... evidence proffered ...; but as he did not address these matters, we are unable to determine whether any such rejection is based on substantial evidence."  *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995).  "Initial determinations of fact and credibility are for the ALJ, and must be set out in the decision...; we cannot speculate whether or why an ALJ rejected certain evidence."  *Id.*  (internal citation omitted).

This error was not harmless, as Dr. Scher found greater limitations than those included by the ALJ.  Specifically, Dr. Scher found that Phillips was capable of working only at positions where quotas are not critical.  (Tr. 90.)  As Phillips points out, both jobs (bench assembler and sorter) cited by the ALJ at step five (Tr. 24, 72) are assembly jobs that would require "production rate pace" (Doc. 10 at 10).

Given the ALJ's discounting of the opinion of Phillips' only treating mental health professional, together with his misconstruing of the opinion of the medical expert, and failure to

discuss the opinion of the state agency psychologist, the ALJ's mental RFC determination is not supported by substantial evidence.

Because this issue is dispositive and this matter will be reversed and remanded to an ALJ for a new determination, the Court will not discuss Phillips' additional argument that the ALJ erred in assessing the credibility of her subjective complaints.

## V. Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall properly consider all of the opinion evidence; obtain, if necessary, additional medical evidence of Phillips' mental ability to perform work-related activity; re-assess Phillips' credibility; and formulate a new mental RFC based on the record as a whole.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of February, 2017.